IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 10 MAP 2014 |
| | : |
| Appellee | : Appeal from the Superior Court order dated |
| | : August 7, 2013 at No. 1588 MDA 2012 |
| | : which Affirmed the judgment of sentence of |
| v. | : the Berks County Court of Common Pleas, |
| | : Criminal Division, dated July 16, 2012 at |
| | : No. CP-06-CR-0003517-2011. |
| NATHAN COOLEY, III, | : |
| | : ARGUED:   October 8, 2014 |
| Appellant | : |

## OPINION

**MR. JUSTICE EAKIN**                                        **DECIDED: June 15, 2015**

This Court granted review to consider whether appellant was subject to custodial interrogation during an encounter with parole agents, such that their failure to issue Miranda[1] warnings violated his Fifth Amendment rights. The courts below admitted appellant's statements at trial, concluding appellant was not in custody for Fifth Amendment purposes and thus not entitled to Miranda warnings. We conclude appellant's interaction with parole agents included custodial interrogation, making admission of the statements error, which was not harmless. Thus, we are constrained to vacate appellant's convictions and remand for a new trial.

On June 30, 2011, while appellant was on parole following a drug conviction, his parole agent, Agent McCartin, received a voicemail from the father of appellant's fiancée,

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

who stated appellant possessed and had been discharging firearms, and may have been selling drugs at his home. Agent McCartin testified he found the voicemail reliable because the caller identified himself and his relationship to appellant, and knew of appellant's recent approved vacation to Virginia.

On July 6, 2011, appellant went to the parole office to meet with Agent McCartin. Upon appellant's arrival, Agent McCartin handcuffed him and searched him for weapons, finding none. Agent McCartin informed appellant that he and other agents were going to search his home for firearms and drugs based on a "course of action[.]" N.T. Trial, 5/10/12, at 96-97. He asked appellant if contraband would be found in his home; appellant became nervous and said he was unsure what agents would discover. Another parole officer, Agent Heidlebaugh, asked him whether firearms would be found in his home; appellant admitted a gun was in a drawer under the living-room couch. The agents transported appellant, still in handcuffs, to his home.

Four parole agents, including McCartin and Heidlebaugh, conducted the search. They recovered a .40 caliber handgun from the drawer identified by appellant and an empty .22 caliber handgun case from appellant's bedroom. They also seized $3,200, one pound of marijuana, and plastic baggies. When confronted with the drugs, appellant admitted they were his. After completing the search, the agents asked where his vehicle was; appellant gave a location, but when the agents drove there, his vehicle was not there. Back at the parole office, agents saw a vehicle and asked appellant if it was his; he confirmed it was. The agents asked appellant whether he had a firearm in the vehicle; he admitted there was one under the passenger seat. The agents took his keys, entered the car, and seized a .22 caliber handgun. From the time of his arrival at the parole office, during the search of his home, and until he returned to the office with the agents, appellant remained in handcuffs and was never given Miranda warnings.

Appellant was charged with two counts each of persons not to possess firearms, 18 Pa.C.S. § 6105(a)(1), and firearms not to be carried without a license,[2] id., § 6106(a)(1), and one count each of possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30), and possession of marijuana, id., § 780-113(a)(31)(i). Appellant filed an omnibus pre-trial motion seeking to suppress the statements made to the parole agents, which the suppression court denied.[3] A jury convicted appellant on all counts; he was sentenced to five to ten years imprisonment followed by seven years' probation. Appellant filed a post-sentence motion, which was denied. He appealed, claiming his statements to the parole agents should have been suppressed because he was never given <u>Miranda</u> warnings.

In its Rule 1925(a) opinion, the trial court held <u>Miranda</u> warnings were not required because appellant was neither in custody nor interrogated.[4] The court determined that appellant was detained at the parole office based on suspected parole violations, but was not subject to an arrest or its functional equivalent. The court primarily relied on 61 Pa.C.S. § 6153(d)(5),[5] which allows a parole agent to detain a parolee who is present

---

[2] The Commonwealth later withdrew one firearms count.

[3] Appellant also filed a motion to suppress the physical evidence, but for purposes of this appeal, appellant only challenges admission of his statements.

[4] The opinion denying appellant's motion to suppress contains analysis substantially similar to the Rule 1925(a) opinion. <u>See</u> Suppression Court Opinion, 3/26/12, at 5-6.

[5] In its entirety, § 6153(d)(5) provides:

> (d) Grounds for personal search of offender.—
>
> *　　*　　*
>
> (5) The offender may be detained if he is present during a property search. If the offender is not present during a property search, the agent in charge of the search shall make

(continued…)

during a property search. The court noted appellant "was detained for the agents' safety before the subject of the informant's tip has been broached." Trial Court Opinion, 12/3/12, at 11. It concluded, "According to established safety protocols, [appellant] remained detained while the parole agents conducted the approved residential search. This detention and questioning by parole agents pursuant to their statutorily defined authority is not the functional equivalent of an arrest that would require the agents to administer Miranda warnings[.]" Id., at 11-12.

The Superior Court affirmed, holding Miranda warnings were not required during questioning by the parole agents because appellant's statements were merely part of a parole interview rather than a custodial interrogation. Commonwealth v. Cooley, No. 1588 MDA 2012, unpublished memorandum at 12 (Pa. Super. filed August 7, 2013). The court stated Miranda warnings are only required when there is custodial interrogation, which is defined as "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Id., at 11 (quoting Miranda, at 444). It noted custody is equivalent to "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id. (citation omitted). The court reviewed various factors and found the mere fact appellant was handcuffed was insufficient to show he was arrested.

The court also determined there was no custodial interrogation because appellant "was not taken to an unfamiliar or coercive environment, there was no use of force or threat of force, and the detention did not last for more than a few hours." Id., at 12. It

(…continued)
> a reasonable effort to provide the offender with notice of the search, including a list of the items seized, after the search is completed.

Id., § 6153(d)(5).

concluded appellant's interactions with the parole agents at the office merely constituted a parole interview, during which Miranda warnings are not usually required. Id., at 12-13. It also concluded detention in conformity with § 6153(d)(5) was not the functional equivalent of an arrest. Id., at 11-13. Thus, the court held the suppression court did not err in admitting appellant's statements regarding the firearms and drugs. Id., at 13.

We granted allocatur to determine "[w]hether there was custodial interrogation, such that the failure to issue Miranda warnings violated [appellant]'s Fifth Amendment rights, requiring suppression of statements made." Commonwealth v. Cooley, 86 A.3d 230 (Pa. 2014) (per curiam). In reviewing a ruling on a suppression motion, our standard of review is well settled: We are bound by the suppression court's factual findings if supported by the record; however, we review the suppression court's legal rulings de novo. Commonwealth v. James, 69 A.3d 180, 186 (Pa. 2013) (quoting Commonwealth v. Briggs, 12 A.3d 291, 320-21 (Pa. 2011)).

Appellant contends a parole agent must issue Miranda warnings to a parolee when he is in custody and questioned about new crimes.[6] He asserts his status as a parolee does not limit his Fifth Amendment rights, and he retained such rights throughout. Appellant asserts the use of restraints, coupled with the length of detention and the accusations of new crimes, further establishes he was in custody. He argues the agents' acts constituted custodial interrogation, and therefore he was entitled to Miranda warnings at the parole office, his home, and in the agents' vehicle.

---

[6] Appellant notes this is an issue of first impression before this Court but points to other jurisdictions that have held Miranda warnings are required during custodial interrogation by a parole agent regarding new crimes. See Appellant's Brief, at 13 (citing United States v. Newton, 369 F.3d 659 (2d Cir. 2004); United States v. Bland, 908 F.2d 471, 472-74 (9th Cir. 1990); United States v. Deaton, 468 F.2d 541, 544 (5th Cir. 1972); United States v. Steele, 419 F. Supp. 1385, 1386-87 (W.D. Pa. 1976); State v. Lekas, 442 P.2d 11, 16 (Kan. 1968); People v. Elliott, 815 N.W.2d 575 (Mich. Ct. App. 2012); and State v. Davis, 337 A.2d 33, 35 (N.J. 1975)).

Appellant argues both the Superior Court and the trial court improperly relied on United States v. Randolph, 210 F. Supp. 2d 586 (E.D. Pa. 2002), for the proposition that "[p]arole agents in any event may without Miranda warnings question parolees." Id., at 589 n.3. Appellant notes Randolph is not binding on this Court and claims the statement relied on by the courts is dictum, as that case involved the Fourth Amendment, not the Fifth Amendment. See id., at 589 & n.3 (quoting Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984)). Alternatively, appellant alleges Randolph actually supports the notion that Miranda warnings are required when a parolee is interrogated about new crimes.[7]

Appellant contends Commonwealth v. Knoble, 42 A.3d 976 (Pa. 2012), indicated a probationer may invoke Fifth Amendment rights in response to questions about new crimes. See id., at 981-82. He asserts we opined in Knoble that statements made to probation or parole agents concerning new crimes must be suppressed if such statements were compelled by threat of probation or parole revocation. Noting we ultimately held Knoble was not in custody, appellant asserts there is custody in this case.

Appellant also claims the Superior Court erred in relying on 61 Pa.C.S. § 6153(d)(5). He asserts that section only involves the Fourth Amendment, and lawfulness of detaining a parolee during a home search is immaterial to a Miranda analysis. Lawfulness of custody neither determines the constitutionality of interrogation

---

[7] Appellant proposes Steele is persuasive, as it "provides a cogent rule that clarifies how Miranda applies to a custodial interrogation of a suspect on probation or parole about new crimes." Appellant's Brief, at 18 (quoting Steele, at 1386-87) ("[T]he proper rule is that while statements made to a probation or parole officer without the Miranda warnings being given are properly admitted in a parole revocation hearing where various types of hearsay may be used to inform the court as to the parole violation, [] when these statements are used to prove an entirely separate offense against the defendant and he is in custody and under the compulsion of discussing matters with his parole or probation officer, Miranda warnings must be given before such testimony can be admitted … in the trial involving the separate offense.").

nor the need to administer <u>Miranda</u> warnings. Appellant points out that police arrived during the search but never spoke to him, though they filed the criminal charges; he posits that had he been handcuffed by police, he would unarguably have been in custody and entitled to <u>Miranda</u> warnings prior to interrogation. He argues the agents were required to do the same because "[p]ermitting police officers to look the other way while a parole agent conducts an unwarned custodial interrogation is unjust." Appellant's Brief, at 25.

The Commonwealth concedes parolees and probationers do not lose Fifth Amendment rights merely because of their status, but contends appellant was not in custody for Fifth Amendment purposes. The Commonwealth notes appellant had been on parole for 17 months without incident and was aware of the rules regarding his supervision; no weapons or other show of force was utilized, and the search was executed without undue delay. The Commonwealth contends the totality of the circumstances overcomes any inference of custody solely from the use of handcuffs.

The Commonwealth claims 61 Pa.C.S. § 6153 detention does not rise to the level of custody for <u>Miranda</u> purposes. The Commonwealth argues the detention of parolees is important for agents' safety during their supervisory process, asserting "[a] precedent that the mere handcuffing of an individual elevates an interaction from detention into custody, requiring the safeguards of <u>Miranda</u>, without other factors demonstrating either force or compulsion, would severely handicap the entire parole process." Commonwealth's Brief, at 19.

The Commonwealth claims this case is similar to <u>Murphy</u>, which held because a probation interview is non-custodial, a probationer's failure to invoke the Fifth Amendment during a probation interview makes his statements admissible. <u>See</u> <u>Murphy</u>, at 429-34. The Commonwealth notes the apparent difference between <u>Murphy</u> and this case — the fact appellant was handcuffed upon his arrival at the parole office —

but argues such a distinction is not dispositive because: (1) the use of handcuffs alone is not determinative of custody; (2) appellant was restrained for the agents' safety based on the tip received; and (3) appellant was detained for the limited purpose of verifying the tip's veracity. Thus, the Commonwealth asserts appellant's detention — both at the parole office and during the search — was not the functional equivalent of an arrest. As the Fifth Amendment was not self-executing, appellant's failure to invoke his rights rendered his statements admissible.

The Fifth Amendment provides "no person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. This prohibition not only permits an individual to refuse to testify against himself when he is a defendant but also "'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" Murphy, at 426 (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)).[8] The Fifth Amendment privilege against self-incrimination is generally not self-executing, and ordinarily an individual must assert the privilege for subsequent statements to be considered "compelled" within the meaning of the Fifth Amendment. Murphy, at 427; Knoble, at 979. However, the Fifth Amendment is self-executing where an individual is subject to custodial interrogation without being given Miranda warnings.[9] Murphy, at 429-30; Miranda, at 467-69.

---

[8] "We have held Article I, § 9 of the Pennsylvania Constitution affords no greater protections against self-incrimination than the Fifth Amendment to the United States Constitution." Knoble, at 979 n.2 (citation omitted).

[9] Another exception to the need to assert the privilege exists when "the government in any way asserts that a probationer's claiming of the privilege would lead to probation revocation[.]" Knoble, at 982 (citing Murphy, at 435). Appellant does not allege this exception here.

With these principles in mind, we turn to the issue presented. A parolee does not lose the Fifth Amendment privilege against self-incrimination merely because of conviction of a crime. Murphy, at 426. Parolees, like any other individual, must be given Miranda warnings when subject to custodial interrogation. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way[,]" Miranda, at 444, and the Commonwealth does not contest that appellant was questioned by law enforcement officers; the only dispute is whether he was in custody.

An individual is in custody if he is "physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." Commonwealth v. Johnson, 727 A.2d 1089, 1100 (Pa. 1999) (citations omitted). Regarding custody, the United States Supreme Court has further held the "ultimate inquiry is ... whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994) (citation omitted). The standard for determining whether an encounter is custodial is an objective one, focusing on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned. Commonwealth v. Gwynn, 723 A.2d 143, 148 (Pa. 1998) (Opinion Announcing Judgment of the Court) (citation omitted).

In Murphy, the United States Supreme Court addressed whether "a statement made by a probationer to his probation officer without prior warnings is admissible in a subsequent criminal proceeding." Murphy, at 425. As part of Murphy's probation, he was obligated to participate in a sex-offender treatment program, report to his probation officer as required, and be completely honest with the officer. Id., at 422. The probation officer was notified that during his treatment, Murphy admitted to a previous rape and

murder.  Id., at 423.  The probation officer arranged a meeting with Murphy and told him about the information she had received expressing the belief this information evinced a need for further treatment.  Id., at 423-24.  During the meeting, Murphy admitted to the rape and murder, for which he was eventually arrested.  Id., at 424-25.

The Supreme Court indicated the Fifth Amendment privilege against compulsory self-incrimination does not preclude voluntary incriminatory statements, and a probationer must claim the privilege if he desires its protection; otherwise, his statement will not be considered "compelled."  Id., at 427 (quoting United States v. Monia, 317 U.S. 424, 427 (1943)).  The Court noted "the general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones … unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination."  Id.  The Court pointed out that while there are well-known exceptions to this general rule, such exceptions contain "some identifiable factor … deny[ing] the individual a 'free choice to admit, to deny, or to refuse to answer.'"  Id., at 429 (quoting Garner v. United States, 424 U.S. 648, 657 (1976)).

The Court concluded Murphy's meeting with his probation officer did not amount to custody for Miranda purposes, as there was no formal arrest or its functional equivalent. Id., at 429-30.  In finding no custody, the Court "emphasize[d] that Murphy was not under arrest and that he was free to leave at the end of the meeting[,]" and opined that "[a] different question would be presented if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting."  Id., at 429 n.5.  As Murphy was not in custody and did not assert the privilege, the Court held his incriminating statements were admissible.  Id., at 440.

This Court addressed a factually similar case in Knoble.  Knoble was on probation and was required to complete a sex-offender program, but was terminated from the

program for being dishonest during therapeutic polygraph tests;[10] he was arrested for violating probation. At Knoble's probation-revocation hearing, a sex-offender counselor testified Knoble, after failing the polygraph, admitted he had been dishonest about his sexual history, victimized other minors, and was guilty of a sexual offense against a minor for which he had been previously acquitted. Id. This Court granted review, and noted "[t]he current situation appears to us even less imposing than that in Murphy[,]" holding Knoble's Fifth Amendment privilege was not self-executing because he was not subject to custodial interrogation. Id., at 980-81. We found Knoble was not in custody because there was no police supervision for his therapy, his treatment was out-patient, and he attended independently. Id., at 981. We also concluded he was not "'compelled' within the meaning of the Fifth Amendment, [because] he knew the terms of his probation, was aware of his ability to challenge the terms prior to beginning his treatment, and failed to raise any such challenge either before or during questioning." Id.

The trial court and the Superior Court relied on Randolph in holding a parole interview is not the equivalent of custodial interrogation, such that agents may question parolees without Miranda warnings. Cooley, at 12 (citing Randolph, at 589 n.3); Trial Court Opinion, 12/3/12, at 11 (same); Suppression Court Opinion, 3/26/12, at 5 (same). The opinion in Randolph only dealt with the Fourth Amendment and a motion to suppress physical evidence; the opinion noted "[a]t the oral argument today, Randolph withdrew his request to suppress statements[.]" See Randolph, at 588 & 589 n.3. Yet, after determining the Fifth Amendment was not at issue, the court further opined that "[p]arole agents in any event may without Miranda warnings question parolees." Id. In support of its determination, the court quoted a footnote from Murphy:

---

[10] "[O]ne of the primary stages of sex offender treatment is for an individual to take a sexual history therapeutic polygraph in order to objectively assess a participant's self-reported sexual history." Knoble, at 978.

"Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.

Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding[] and thus eliminates the threat of incrimination."

Id. (quoting Murphy, at 435 n.7).

This quotation concerned the Supreme Court's inquiry whether a probationer's failure to assert his privilege against self-incrimination would be excused when a probation officer "either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation[.]" Murphy, at 435. The footnote pertained to the use of a probationer's statements in revocation proceedings and addressed whether Murphy was deterred from asserting the privilege by a reasonably perceived threat of probation revocation. See id., at 435 & n.7; see also Randolph, at 589 n.3.

Appellant's challenges to application of Randolph are well taken. The case is not binding precedent, the language was dictum, and the Fifth Amendment was not at issue there. Further, Randolph involved a threat of parole revocation, which is not present here. Thus, we find that both the trial court's and the Superior Court's reliance on Randolph was misplaced.

While Murphy and Knoble are factually distinguishable because neither involved actual custody, we find portions of Murphy's reasoning particularly instructive. The Murphy Court "emphasize[d] that Murphy was not under arrest and that he was free to leave at the end of the [probation] meeting[,]" and it noted "[a] different question would be presented if he had been interviewed by his probation officer while being held in police custody[.]" Murphy, at 429 n.5. As quoted above, the Murphy Court determined a state may insist on answers to incriminating questions "as long as it recognizes that the

required answers may not be used in a criminal proceeding[.]" Id., at 435 n.7 (emphasis added).   The Murphy Court further explained:

> A state may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege.   The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution.

Id., at 435 (emphasis added).

The Murphy Court also addressed the difference between custodial interrogation and a routine probation interview, determining a probationer must invoke his privilege against self-incrimination when questioned during the latter, as the privilege is not self-executing, and a probation requirement to appear at the meeting and be completely honest does not violate a probationer's Fifth Amendment rights.   See id., at 429-37.  The Supreme Court noted a pre-arranged probation meeting in an atmosphere familiar to the probationer does not involve the psychological ploys of custodial arrest.   Id., at 433 (citing Miranda, at 456-57).   The Court determined "Murphy was not physically restrained and could have left the office," and any compulsion he may have perceived from ending the probation meeting "was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator."   Id.

It is beyond cavil that no mere parole interview took place here.   Appellant had been on parole for 17 months without incident, and just returned from an approved out-of-state vacation.   There is no evidence any prior meeting involved handcuffing, but appellant was immediately restrained upon arrival.   This may be understandable and legal, but that does not make it less custodial.   Appellant was then accused of crimes for which he was not on parole; there was no "interview" or dialogue related to the conditions of his parole or parole violations.   While the use of handcuffs is not dispositive of a

custody analysis, and we still must conduct a totality-of-the-circumstances analysis, the use of restraints is "generally recognized as a hallmark of a formal arrest." United States v. Newton, 369 F.3d 659, 676 (2d Cir. 2004) (citing New York v. Quarles, 467 U.S. 649, 655 (1984); Dunaway v. New York, 442 U.S. 200, 215 & n.17 (1979)). It is difficult to credit any suggestion that appellant, or anyone else, would have felt free to leave here.

After handcuffing, appellant was searched; nothing was found. There is no evidence the agents felt threatened after that, but the restraints were not removed. No one told appellant he was not under arrest or that he was restrained pursuant to routine policy. Instead, the parole agents stated he was being investigated for new crimes; their interrogation and search was unquestionably aimed at crimes for which he was not on parole. At that point, the parole agents' conduct was the functional equivalent of that of police officers.

Based on the totality of the circumstances, we find a reasonable parolee would not feel free to terminate the encounter and leave the parole office.[11] Therefore, we hold appellant was subject to custodial interrogation, and because the privilege was self-executing, the parole agents' failure to administer Miranda warnings violated appellant's Fifth Amendment rights.[12] As a result, appellant's statements should have been suppressed, and it was error for the courts below to admit them.[13]

---

[11] Parolees may not feel free to terminate a parole meeting and leave the parole office before the meeting has ended; however, as Murphy noted, "any compulsion [a parolee] might … fe[el] from the possibility that terminating the meeting would have led to revocation of probation [is] not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator." Murphy, at 433; see also Howes v. Fields, 132 S. Ct. 1181, 1190 (2012) ("[T]he [] question [is] whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda.").

[12] Handcuffing appellant was entirely reasonable under the Fourth Amendment, though it resulted in custody for purposes of Miranda. Likewise, 61 Pa.C.S. § 6153 allows his detention during the home search. However, the lawfulness of custody does not mean (continued…)

In determining whether this error requires the grant of a new trial, we must consider whether the error was harmless. Appellant claims the admission of his incriminating statements substantially prejudiced him because an essential element of his crimes was possession, and his statements identified the location of the firearms and admitted possession of the firearms and drugs. "An error is harmless if it could not have contributed to the verdict. In other words, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." Commonwealth v. Wright, 961 A.2d 119, 143 (Pa. 2008) (citation omitted). It is the Commonwealth's burden to prove beyond a reasonable doubt that the error did not contribute to the verdict. Id. (citation omitted). The Commonwealth does not argue the physical evidence was sufficient to support the convictions or that the verdict would be the same if appellant's statements were suppressed. The Commonwealth makes no argument concerning harmless error; thus, it has failed to meet its burden. For these reasons, we find this error was not harmless, as we cannot determine beyond a reasonable doubt that it did not contribute to the verdict.

In sum, we hold appellant was subject to custodial interrogation such that his parole agents' failure to issue Miranda warnings violated his Fifth Amendment rights, the courts below erred in failing to suppress his incriminating statements, and such error was

---

(…continued)
there was no custody, and as such does not preclude appellant's Fifth Amendment claim. We also observe the burden of reciting Miranda warnings is not an onerous one.

[13] A court views the totality of circumstance in each case; we accordingly limit our holding to the facts presented here and recognize the outcome might be different with factual variations. We also express no opinion as to whether the privilege is self-executing when, during a routine interview or home search, a probationer or parolee is required to answer questions that may incriminate him in a future criminal prosecution.

not harmless. Thus, appellant is entitled to a new trial consistent with the guidelines set forth in this opinion.[14]

Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

Former Chief Justice Castille and former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Saylor, Mr. Justice Baer and Madame Justice Todd join the opinion.

Mr. Justice Stevens files a dissenting opinion.

---

[14] We acknowledge appellant, in his brief, argued in the alternative that his sentence was unconstitutional pursuant to Alleyne v. United States, 133 S. Ct. 2151 (2013), as he was sentenced to the mandatory minimum under 42 Pa.C.S. § 9712.1. See Appellant's Brief, at 9 n.1. Because we remand for a new trial, we need not address appellant's claim and do not express any opinion as to that issue.