J-A18031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY DASHAWN LEWIS | : | |
| | : | No. 336 WDA 2016 |
| Appellant | | |

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007104-2015

BEFORE:  BOWES, J., LAZARUS, J., and OTT, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED AUGUST 09, 2018**

I concur with my distinguished colleagues regarding Appellant's first issue.  However, regarding the admission of evidence establishing that Appellant previously impregnated a sixteen-year-old, I would find that the evidence was irrelevant, inadmissible, and that its introduction was not harmless error beyond a reasonable doubt.  I therefore respectfully dissent as to that issue.

This sexual assault case, like most, was largely a battle of credibility. The Commonwealth presented the testimony of two witnesses: the victim, T.J., who was ten years old at the time of trial, and eight years old when the incident occurred; and Detective Rebecca Meder, who authenticated a recorded statement taken by a forensic interviewer.

There is no doubt that T.J.'s testimony, standing alone, was sufficient to convict. However, I find that the Commonwealth prejudiced the jury's fundamental task of assessing credibility by introducing irrelevant evidence. The challenged evidence, that Appellant impregnated a sixteen-year-old when he was twenty-two years old, was introduced in response to the following exchange during Appellant's direct testimony:

Q. And would you ever have any issue with anybody inappropriately touching one of your children?

A. Yes, ma'am.

Q. And why is that? How would you react?

A. It cannot be explained, ma'am. I actually would not know the reaction.

Q. And that hasn't happened, but can you even think about that happening?

A. I don't even want to imagine, ma'am.

Q. And do you have any objection to men touching little children?

A. Yes, ma'am.

Q. Now, you learned about the allegations at some point in time later after the fact?

A. Yes, ma'am.

Q. And once you learned about those allegations, what did you do? How did you feel?

A. I fe[lt] torn apart. Like, I feel angry, sad. At first, like, how can somebody think that I touched their child? And then, like, just embarrassed. Just the fact of being accused of something like that can tear you apart. It's hard to explain.

J-A18031-17

N.T., 11/4-6/15, at 247-48. The Commonwealth commenced its cross-examination by asking questions about Appellant's seven children and their ages, and focused on two children in particular:

Q. And the children that you have with Sadae Young, which children are they?

A. It would be Shyann and Serenity.

Q. So Shyann is four to five years old?

A. Yes, ma'am.

Q. And Serenity, who is a baby, one going on two. And how old is Sadae?

*Id*. at 249. Appellant objected, and at sidebar informed the trial judge that Ms. Young was under eighteen when the oldest of the two children was born. Appellant argued that the Commonwealth was attempting to place that issue before the jury for the purposes of establishing sexual deviancy. Not so, replied the prosecutor, as the age of Ms. Young impeached his credibility, an argument that the trial court accepted:

[COMMONWEALTH]: I believe it goes towards his credibility. Does he know her name? How old is she? He said that he has a very good relationship with his children, and I just want to explore what he does to take care of his children. Is he only talking about the two children that he has with her? Because I believe she's the one that lives with them.

[APPELLANT]: How does that go towards his credibility?

[COMMONWEALTH]: The questions on direct examination were about if he was a good father, what he does with his children, if he would be upset if someone would do something to a young person, and additionally the other witnesses testified –

- 3 -

THE COURT: I think it is relevant on cross-examination to explore his family dynamic that you got into on direct with him. You did ask him questions that related to his relationship with his children and --

[APPELLANT]: I have no problem with that, Your Honor. My issue is going into the ages. I don't know the ages of the children. That was asked on cross-examination. Going into the specific ages of the children and then going into the ages in which they were born with their respective mothers has nothing to do with the elements of the charges here.

THE COURT: It doesn't have to do with the elements. I think it does have to do with his credibility with regard to his own description of his disgust, and I wrote down a number of words he used -- incredulous, embarrassed. He didn't say incredulous. He said torn apart, embarrassed. I do think it is relevant cross-examination. I'll allow it.

*Id*. at 250-51.

At this juncture, I note that the Commonwealth, trial court, and the Majority all condition the admissibility of this evidence on Appellant's testimony.[1] In other words, all appear to accept that the following argument, absent Appellant's own testimony, would be improper: "Ladies and gentlemen of the jury, Appellant sexually touched the eight-year-old victim. You may find it more likely that he did so because, when he was twenty-two, he had sex with a sixteen-year-old girl."[2]

---

[1] We may affirm on any basis.

[2] As indicated on cross-examination, Ms. Young had just turned seventeen when the child was born. N.T., 11/4-6/15, at 253.

Presuming we all agree that argument would be improper, what did Appellant say that opened the door to this otherwise inadmissible evidence? The Commonwealth observes that Appellant

> made his reaction to the charges of touching a child in a sexually inappropriate manner a part of the case through his direct testimony. The trial court found the prosecutor's cross[-]examination relevant to explore the truthfulness of his assertion that such a claim would embarrass him, considering what he would have confronted after impregnating a female between the age of 16 and 17 years.

Commonwealth's brief at 18-19. The Majority agrees, and affirms on this basis:

> We agree with the trial court. The Commonwealth's question was used for the limited purpose of rebutting Lewis's own statement (and defensive strategy) that it was abhorrent for an older person to touch a minor person. Lewis had "opened the door" to this line of inquiry when he answered questions related to his relationship with his children and the possibility of them being touched by an older person.[fn] As such, we conclude the rebuttal evidence was relevant and was not used solely to establish Lewis showed criminal propensity towards assaulting minors.
>
> _____
>
> [fn] Furthermore, it merits mention that in his appeal, Lewis attempts to minimize the fact he was significantly older than Young and that they did have a relationship while she was a minor.

Majority Memorandum at 16-17.

I respectfully disagree. Appellant's testimony that he objected to men touching "little children" does not open the door to evidence of his dalliance with a sixteen-year-old. I agree that those two things are similar in **kind** in that both generally involve sexual acts with a person under eighteen.

- 5 -

However, both do not involve "little children" as one involves sex with a sixteen year old and one involves sexually touching an eight year old.[3] Therefore, I cannot agree that his relationship with Ms. Young casts doubt on Appellant's testimony that the accusation of sexually touching an eight-year-old caused embarrassment, whereas his relationship with Ms. Young apparently did not.

Respectfully, the Majority declines to discuss how this evidence impeaches Appellant's credibility as opposed to simply denigrating his character. The Majority implicitly concludes that Appellant's embarrassment at being accused of sexually touching an eight-year-old could not be genuine because of his sexual relationship with Ms. Young. I do not believe that those two things are equivalents. I believe that the Rules of Evidence sanction the admission of evidence on those grounds. The evidence that Appellant impregnated a sixteen-year-old girl attacked his character, was a specific instance of misconduct, and suggested a propensity to commit the crime at issue.

Finally, with respect to the question of admissibility, the Commonwealth does not seriously contend that the trial court properly accepted the evidence.

_____

[3] In Pennsylvania, the age of consent is sixteen, while the legality of sex with a thirteen, fourteen, or fifteen year old depends on the age of the other party. *See* 18 Pa.C.S. § 3122.1 (statutory sexual assault). In contrast, consensual sex with someone under thirteen is impossible. *See* 18 Pa.C.S. § 3131(c) (rape of a child).

To its credit, the brief concedes that the logic relating this evidence to credibility is questionable. "Given the opportunity for reflection and study, which the role of an appellate advocate provides, the Commonwealth's attorney must acknowledge that the position of its trial prosecutor might be more tenuous than she or the trial court perceived." Commonwealth's brief at 19. For the foregoing reasons, I find that the rationale for admitting the evidence was not merely tenuous, but untenable. Therefore, I would hold that the trial court erred by admitting the evidence.

The remaining question is whether the error warrants a new trial. Our Supreme Court has set forth the following test:

> [A]n erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error was harmless. The Commonwealth bears the burden of demonstrating harmless error. Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis;* (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Chmiel*, 889 A.2d 501, 521 (Pa. 2005) (citations omitted).

The Commonwealth's brief sought to establish the error was harmless beyond a reasonable doubt for these reasons:

> But even if this Court finds the testimony irrelevant, any error was harmless. On direct examination appellant informed the jury that he had fathered seven children despite only being 27 years–old. According to that direct testimony, appellant tried to

stay involved in his children's lives and didn't turn his back on his responsibilities. The jury was instructed that they were not to let any sympathy, prejudice, or emotion influence their verdict. The jury did not act as a mere rubber stamp as it acquitted appellant of Endangering Welfare of Children.

Commonwealth's brief at 19-20 (citations omitted).

The Commonwealth appears to suggest that the admission of testimony regarding Appellant having seven children at a young age was so damning that the irrelevant evidence at issue was either *de minimis* or cumulative in comparison.[4] This argument underscores my point that the evidence was introduced not for credibility purposes, but character. However, "an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." **Commonwealth v. Cooley**, 118 A.3d 370, 380 (Pa. 2015) (citation omitted). The Commonwealth assesses the testimony as bearing only upon the jury's evaluation of Appellant's testimony, whereas I view the prejudicial effect as bolstering T.J.'s account in terms of Appellant's propensity to commit the act. Since T.J.'s credibility was vitally important, I find that there is a reasonable possibility that the error might have contributed to the verdict.[5]

_____

[4] As it relates to that point, having seven children by twenty-seven is the type of fact that would, I do not doubt, give pause to many jurors. However, moral judgments of Appellant's past are not legally relevant to the question of harmless error regarding the introduction of the challenged evidence.

[5] To the extent the Commonwealth attaches dispositive significance to the jury's acquittal of endangering the welfare of children, I disagree. The

Finally, I note that the Majority's analysis of harmless error materially differs from that set forth in the Commonwealth's brief. My learned colleagues determine that "the evidence of Lewis's relationship with Young was *de minimis* in comparison to the overwhelming credibility evidence he introduced in the form of family members who testified that they never saw Lewis near the victim at the party in question or observed that the victim was upset at any point." Majority Memorandum at 17-18. In short, the Majority concludes that any prejudice occasioned by the Commonwealth's introduction of his sexual relationship with Ms. Young was offset by evidence presented by Appellant's own witnesses.

_____

acquittal is a relevant consideration, as cited by the Commonwealth. **See Commonwealth v. Green**, 162 A.3d 509, 522 (Pa.Super. 2017) (finding error harmless; "The jury's verdict makes clear the admission of the challenged testimony did not control the verdict.").

Notwithstanding, the relevance of the acquittal is simply one factor to be considered. There is no *per se* rule that acquittal of any offense demonstrates that evidentiary errors were harmless; indeed, that would simply encourage prosecutors to charge crimes of questionable applicability. Herein, the jury acquitted Appellant of endangering the welfare of a child, which, *inter alia*, required proof that Appellant violated a duty of care towards T.J. The evidence on this point was rather lacking.

Additionally, I submit that the legal significance of acquittals in a harmless error analysis goes towards corroboration of *de minimis* prejudice, not, as the Commonwealth suggests, an **independent** justification for a finding of *de minimis* prejudice. Finally, the corroborative effect of an acquittal is doubtlessly stronger in cases where there is other evidence tending to establish guilt. ***Id***. (noting the error was *de minimis* "by comparison to the properly admitted and uncontradicted evidence of [Green]'s guilt"). Such evidence is absent here, as the case was solely a question of credibility.

The Majority's harmless error analysis compares the prejudice occasioned by informing the jury Appellant impregnated Ms. Young with testimony from his family members about the incident in question. I fail to see how this Court can determine the latter testimony renders the former evidence *de minimis* in "comparison," as the two things cannot be meaningfully compared.

Furthermore, the Majority's belief that Appellant's own fact witnesses cured the admission of the erroneously introduced evidence does not comport with a harmless error analysis. The jury did not credit the alternative version offered by Appellant's witnesses, since it convicted him. When determining whether an error is harmless by reviewing the evidence supporting the verdict, we examine the **uncontradicted** evidence of guilt, not uncredited defense evidence that contradicted the Commonwealth's facts. To opine, as the Majority does, that Appellant was not prejudiced because the jury failed to credit his version of events is to fault him for not presenting overwhelming evidence to the jury that he was innocent. The Majority cannot find overwhelming uncontradicted evidence of guilt in this case because it does not exist.

Additionally, even if I were to accept this Court could assess the defense evidence in this manner, the record demonstrates that the jury could have credited all of Appellant's witnesses and still found him guilty. I briefly review the relevant testimony.

Appellant's grandmother, Cordova Long-Eberhardt, testified that she did not know if T.J. was at the party. N.T., 11/4-6/15, at 151. She also agreed that she could not see the kitchen, where T.J. testified that the incident occurred, from her vantage point in the dining room, where she remained throughout the party. *Id*. at 153-54 ("Q. [W]hen you're sitting in the dining room, you cannot see the entire kitchen? A. Right."); ("Q. [Y]ou spent the entire duration of the party . . . in between the dining room and your bedroom? A. Right."). Rosa Coleman, Appellant's aunt through marriage, agreed that she was not with Appellant the entire day. *Id*. at 177 ("A. Was I with him? Not the entire day, no."). Appellant's uncle, James Edward Long, likewise could not state that the incident did not occur. *Id*. at 196 ("Q. And you were not in the kitchen every moment of the party; is that correct? A. No. I had to go out and attend to the grill."). The same was true of Keaira Redmon and Kevin Fowler. *Id*. at 211 ("A. I can't say we were there 24/7 next to each other[.]"); 229 ("Q. And you were with Kelly. You weren't with him every second of the day? A. No."). Thus, no witness could firmly state Appellant did not commit the crime.[6]

Appellant deserves his conviction and sentence if T.J.'s testimony was accepted as true, but the jury did not need to know when he had sex with the

---

[6] Additionally, the Commonwealth suggested on cross-examination that the witnesses were biased because of their relationship to Appellant. N.T., 11/4-6/15, at 157 (Long-Eberhardt), 167 (Coleman), 192 (Long), 220 (Redmon), 231 (Fowler).

mother of two of his children in making that determination. Its cognizance of Appellant's sexual history with a sixteen-year-old, with the implicit suggestion that the sex occurred at even earlier ages, is the type of error that I believe could reasonably contribute to the verdict in a case of this nature. *Cf. Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992) ("In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility."). I would therefore grant a new trial.