**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COREY EUGENE SNYDER | : | |
| | : | |
| Appellant | : | No. 93 MDA 2025 |

Appeal from the Judgment of Sentence Entered January 2, 2025
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000305-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COREY EUGENE SNYDER | : | |
| | : | |
| Appellant | : | No. 94 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 20, 2024
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000697-2024

BEFORE: PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED MARCH 24, 2026**

In these consolidated appeals, Corey Eugene Snyder ("Snyder") appeals from the judgments of sentence imposed following his jury convictions at trial docket CP-44-CR-0000697-2024 ("Docket 697"), and non-jury convictions at trial docket CP-44-CR-0000305-2023 ("Docket 305"), both for firearms offenses. We affirm.

We glean the following undisputed facts from the suppression hearing notes of testimony. Snyder was on parole at the time of the underlying offenses. His approved residential address was 14130 Croghan Pike in Mount Union (the "Croghan Residence."). Snyder agreed to and signed the written rules (the "Rules of Supervision") of his parole, which prohibited him from possessing firearms, possessing or consuming alcohol or controlled substances, and changing his residence without permission. The Rules of Supervision also provided:

> . . . A [parole officer] may visit you at your residence or such other place as they deem necessary. When requested, you will provide access to your residence. Your [parole officer] has the authority to search your person, place of residence or vehicle without a warrant if the [parole officer] has reasonable suspicion you are in violation of these rules.

Mifflin County Office of Probation and Parole Rules of Supervision, signed 9/2/21, at 1, exhibit to Trial Court Opinion, 3/21/25.

In April 2023, Snyder's parole officer, Chantz Swartz ("PO Swartz"), "viewed a video . . . publicly posted on Facebook that involved [Snyder] possessing alcohol and a firearm, therefore violating the Rules of Supervision." Trial Court Opinion, 3/21/25, at 2. PO Swartz scheduled an appointment with Snyder for May 12, 2023, and Snyder's girlfriend drove him there. Snyder first submitted to a drug test, which showed a positive result for marijuana. PO Swartz then asked Snyder "where he had been staying," and Snyder replied that he stayed at his girlfriend's home, at 200 Bentwood Lane,

McVeytown (the "Bentwood Residence"), three times a week.[1]  N.T., 6/11/24, at 38.  PO Swartz informed Snyder that he viewed the Facebook video, and Snyder said the authorities "wouldn't find [the gun] because he threw it over the bank [*sic*]."  *Id*. at 38-39.

Based on the parole violations evidenced in the Facebook video and Snyder's positive drug test, PO Swartz decided to search the Bentwood Residence.  *See id*. at 40, 51.  PO Swartz placed Snyder in handcuffs and, along with at least one other officer, transported him to the Bentwood Residence.  PO Swartz "treat[ed this] as his residence because [he said] he stay[ed] there three days a week."  *Id*. at 57.

Snyder provided the officers with the passcode to enter the house. Snyder sat in the living room while PO Swartz watched him for officer safety and other parole officers searched the house.  Snyder remained handcuffed the entire time, and at no point did the officers provide him with ***Miranda***[2] warnings.

The parole officers found suspected cocaine, suspected methamphetamine, and a "conversion kit for a handgun," which PO Swartz described as capable of "turning a handgun into . . . a smaller rifle."  N.T., 6/11/24, at 42.  PO Swartz questioned Snyder about it and asked where the

---

[1] Snyder's mother, and subsequently her estate, owned both the Croghan Residence and the Bentwood Residence.

[2] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

gun was. *Id*. at 43. Snyder replied "there was no gun in the" house, but PO Swartz believed he "was lying to" him and told him "it would go faster if he just was cooperative." *Id*. at 43, 59. Snyder then said that "the last time he saw [the gun,] it was in the [pickup] truck" parked on the property. *Id*. at 43. Upon further questioning, Snyder told the officers where the keys were. Officers used the key to open the truck and discovered a handgun inside.

At that juncture, PO Swartz contacted the Pennsylvania State Police (PSP), who advised they would obtain a search warrant and dispatch an officer. The parole officers ceased their search. In the PSP's subsequent search pursuant to the search warrant, they

> seized multiple rounds of ammunition, suspected cocaine, suspected methamphetamine, marijuana, drug paraphernalia, a handgun, a set of brass knuckles, and a gun safe. PSP obtained another search warrant for the gun safe, which [contained] eight firearms, one of which was a sawed-off shotgun with a barrel length of twelve and one-half . . . inches.

Trial Court Opinion, 3/21/25, at 3.

The Commonwealth charged Snyder with, *inter alia*, two counts of prohibited offensive weapons[3] and nine counts of persons not to possess firearms.[4] Snyder filed a pre-trial motion, seeking suppression of the evidence

---

[3] ***See*** 18 Pa.C.S.A. § 908(a) (defining prohibited offensive weapons as making, repair, selling, using, or possessing any offense weapon). The trial court referred to this offense as "make repairs to offense weapons." Trial Court Opinion, 3/21/25, at 4.

[4] ***See*** 18 Pa.C.S.A. § 6105(a)(1).

seized, on the grounds that the parole officers committed an illegal warrantless entry and search of a residence where Snyder was an overnight guest and had a reasonable expectation of privacy. Snyder also sought suppression of the statements he made to PO Swartz, as well as any evidence discovered as a result thereof, citing the lack of **Miranda** warnings.

The trial court conducted a suppression hearing, at which PO Swartz testified as summarized above. Snyder did not testify. The trial court denied Snyder's motion to suppress. **See** Order and Opinion, 7/26/24. The court subsequently granted Snyder's motion for reconsideration, but ultimately denied the motion again. **See** Order and Opinion, 9/26/24.

Upon motion by the Commonwealth, the trial court severed the charges of persons not to possess firearms charges for trial, and listed those charges at Docket 697. A jury found Snyder guilty of nine counts of persons not to possess firearms. On December 20, 2024, the trial court imposed sentence.

Meanwhile, the two charges of prohibited offensive weapons, which remained on Docket 305, proceeded to a separate jury trial. The jury found him guilty of both counts. On January 2, 2025, the trial court imposed sentence, resulting in an aggregate sentence, across both trial dockets, of ten to twenty years' imprisonment, followed by one year's reentry supervision.

Snyder did not file any post-sentence motions, but filed timely notices of appeal at each docket. He and the trial court have complied with Pa.R.A.P. 1925. This Court *sua sponte* consolidated the two appeals.

- 5 -

Snyder presents three issues for our review:

I.    Whether the trial court erred in denying [Snyder's] motion to suppress by finding that he did not have a reasonable expectation of privacy to the place searched?

II.   Whether the trial court erred in denying or failing to address [Snyder's] motion to suppress challenging the probation officers' warrantless entry into a private residence?

III.  Whether the trial court erred in denying or failing to address [Snyder's] motion to suppress prior to trial challenging probation's custodial interrogation without first advising him of his **Miranda** warnings?

Snyder's Brief at 4 (unnecessary capitalization omitted).

We address together Snyder's first two issues, which challenge the trial court's denial of suppression with regard to the search of the house. Snyder avers the trial court erred in: (1) finding that he did not have a reasonable expectation of privacy in the Bentwood Residence; and (2) denying relief on his challenge to the warrantless search of that residence.

We consider the applicable standard of review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression

court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. McClellan***, 178 A.3d 874, 880-81 (Pa. Super. 2018) (citation omitted). "With respect to a suppression court's factual findings, 'it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.'" ***Commonwealth v. Heidelberg***, 267 A.3d 492, 499 (Pa. Super. 2021) (citation omitted).

With respect to persons on parole, this Court has explained:

> A parolee has limited Fourth Amendment rights because of a diminished expectation of privacy. A "parolee's signing of a parole agreement giving his parole officer permission to conduct a warrantless search does not mean either that the parole officer can conduct a search at any time and for any reason or that the parolee relinquishes his Fourth Amendment right to be free from unreasonable searches."
>
> However, under [now numbered Section 6182 of the Prisons and Parole Code,[5]] "Supervisory relationship to offenders," an Agent of the Pennsylvania Board of Probation and Parole may conduct a warrantless property search "if there is reasonable suspicion to believe that the real or other property in the possession or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision[,]" subsection [6182](d)(2)[.[6]]

---

[5] ***See*** 61 Pa.C.S.A. §§ 101-7301. The ***McClellan*** decision addressed the then-in effect Section 6153 of the Prisons and Parole Code. In 2021, the legislature renumbered that statute to 6182, with the same title and near-identical language to that quoted above.

[6] At this point in the discussion, the ***McClellan*** Court referred to then-in effect subsection 6153(d)(3), which provided that a parole officer may conduct a warrantless property search "in the absence of exigent circumstances [if] prior
*(Footnote Continued Next Page)*

Subsection [6182(d)(4)] addresses the formulation of reasonable suspicion to support a property search without a warrant:

. . . The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of [agents].

(ii) Information provided by others.

(iii) The activities of the . . . offender.

(iv) Information provided by the . . . offender.

(v) The experience of [agents] with the . . . offender.

(vi) The experience of [agents] in similar circumstances.

(vii) The prior criminal and supervisory history of the . . .offender.

(viii) ***The need to verify compliance with the conditions of supervision.***

61 Pa.C.S.A. § [6182(d)(4)(i)-(viii)].

***McClellan***, 178 A.3d at 881 (some citations omitted and emphasis and paragraph break added).

_____

approval of a supervisor is obtained." ***McClellan*** , 178 A.3d at 881. The current section 6182 does not include an analogous provision, and we have omitted it in our quotation above.

- 8 -

For ease of review, at this juncture we set forth the trial court's rationale for denying relief on Snyder's challenge to the warrantless search of the Bentwood Residence. The court reasoned that the "threshold issue" was whether Snyder "was residing at an unapproved residence," as the Commonwealth argued, or "was acting as an overnight guest," as Snyder maintained. Trial Court Opinion, 3/21/25, at 3. The court agreed with the former, finding that the Bentwood Residence was in fact Snyder's residence. In support, the court considered that Snyder admitted to residing there three times per week, and he provided the officers with the keycode to unlock the door. The court thus found that Snyder "did not have a reasonable expectation of privacy [there,] and . . . was susceptible to a warrantless search of the property" per both the Rules of Supervision and Section 6182(d)(2).[7] *Id*. at 5-6. Specifically, Snyder "was in control of the Bentwood [R]esidence" pursuant to the language of Section 6182(d)(2). *Id*. at 6.

On appeal, Snyder: (1) insists that he was an overnight guest at the Bentwood Residence; and (2) argues he had a reasonable expectation of privacy there. Snyder asserts that "[w]hile a parolee has a diminished

---

[7] The trial court's opinion cited Section 9912(d)(2) of the Judicial Code, 42 Pa.C.S.A. §§ 101-9914, which pertains to a **probation** officer's authority to conduct a warrantless search of property. **See** 42 Pa.C.S.A. § 9912(d)(2). Here, PO Swartz was acting in his capacity as a **parole** officer. Nevertheless, we note the language of Section 9912(d)(2) is identical to that in Section 6182 of the Prisons and Parole Code, save the references to a probation and parole agent.

expectation of privacy, an expectation privacy still remains" and a trial court must review the facts "of each case to determine whether probation/parole officers had specific, articulable, reasonable suspicion to conduct a warrantless search of the place[.]" Snyder's Brief at 26. Snyder avers that here, the evidence positively established the factors, set forth in caselaw, for determining a defendant's legitimate expectation of privacy "in another person's home." *Id*. at 22. Snyder maintains: he knew the key code — the equivalent of having a key to the premises; he had unlimited access to the premises; he stored possessions, and engaged in illegal activity, in the premises; he could exclude others from the home, as the doors were locked and he knew the key code; and he expressed a subjective expectation of privacy, as evidenced by his acknowledgment that he stayed there three nights per week. Snyder alleges that "his parole status [did] not distinguish [*sic*] his expectation of privacy from that of any other 'overnight guest.'" *Id*. at 27.

In his second issue, Snyder asserts "that absent exigent circumstances or consent, the probation officers' warrantless entry into a private residence where [he] had been an overnight guest was unlawful." *Id*. at 29. Snyder also avers there was no valid consent, by the resident — his girlfriend — to search the premises.

After careful review of the record, we determine the record supports the trial court's suppression ruling. *See **McClellan***, 178 A.3d at 880-81. While

arguing to this Court that he was merely an overnight guest at the Bentwood Residence, Snyder does not challenge the trial court's determination that he in fact resided there. He does not present any discussion why this initial finding was in error. In any event, the record supports the court's reasoning. As the court observed, Snyder plainly told officer Swartz that he resided or lived there three days a week with his girlfriend, and he knew the keycode to unlock the door.

On this factual premise — that Snyder's residence was the Bentwood Residence — we next consider whether Officer Swartz had reasonable suspicion to believe he was committing a parole violation, as required by both the Rules of Supervision and Section 6182(d)(2) before the officer could conduct a warrantless search. **See** 61 Pa.C.S.A. § 6182(d)(2) (stating that a parole agent may conduct a property search "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the . . . offender contains contraband or other evidence of violations of the conditions of supervision); **see also** Rules of Supervision at 1 (providing that Snyder's parole officer "has the authority to search [his] person, place of residence or vehicle without a warrant if the [officer] has reasonable suspicion [he was] in violation of these rules").

We determine the record supports the trial court's finding that PO Swartz possessed the requisite reasonable suspicion. **See McClellan**, 178 A.3d at 880. At the suppression hearing, PO Swartz provided uncontroverted

testimony that he viewed a Facebook video showing Snyder consuming alcohol and possessing a firearm. At the May 2024 parole appointment, Snyder tested positive for marijuana use. We further note that he changed his residence without prior approval. All of this conduct would have violated the terms of Snyder's supervision. In light of the foregoing, we conclude the trial court did not err in finding the warrantless search was valid.

On this basis, we further determine that no relief is due on Snyder's additional claims — that the warrantless search was improper because there were no exigent circumstances or a valid consent to search. Even absent exigent circumstances or consent, PO Swartz had the authority to search the Bentwood Residence pursuant to the Rules of Supervision and Section 6182(d)(2). Snyder's first and second issues are meritless.

In his final issue, Snyder asserts that the trial court erred in denying relief on his claim that the lack of **Miranda** warnings was unlawful. The Pennsylvania Supreme Court has explained:

> The Fifth Amendment provides "no person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. This prohibition . . . "'privileges [a defendant] not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in **future** criminal proceedings.'"

**Commonwealth v. Cooley**, 118 A.3d 370, 375 (Pa. 2015) (some citations omitted and emphasis added).

> . . . A parolee does not lose the Fifth Amendment privilege against self-incrimination merely because of conviction. Parolees, like any other individual, must be given **Miranda** warnings when

- 12 -

subject to custodial interrogation. Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way[.]"

An individual is in custody if he is "physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." . . . The standard for determining whether an encounter is custodial is an objective one, focusing on the totality of the circumstances with due consideration given to the reasonable impression conveyed to the individual being questioned.

*Id*. at 376 (citations omitted).

In *Cooley*, the Pennsylvania Supreme Court considered *Minnesota v. Murphy*, 465 U.S. 420 (1984), in which the United States Supreme Court

addressed the difference between custodial interrogation and a routine probation interview, determining a probationer must invoke his privilege against self-incrimination when questioned during the latter, as the privilege is not self-executing, and a probation requirement to appear at the meeting and be completely honest does not violate a probationer's Fifth Amendment rights. *See* [*Murphy*, 465 U.S.] at 429-37. . . .

*Cooley*, 118 A.3d at 378.

We consider the facts in *Cooley*, on which Snyder relies. In that case, a parole agent received information that the defendant, a parolee, possessed firearms and may have sold drugs in his home. *Cooley*, 118 A.3d at 371-72. At the agent's request, the defendant reported to the parole office. *See id*. at 372. Upon arrival, the agent handcuffed the defendant, searched him for weapons and found none, and informed him that agents would search his home for firearms and drugs. *See id*. Another parole agent asked the

- 13 -

defendant if there were guns at his home; the defendant admitted there was a gun in his living room. *See id*. The agents transported the defendant, still in handcuffs, to his home, conducted a search, and recovered a handgun and marijuana. *See id*. Upon further questioning, the defendant stated that a vehicle was his, and when asked whether there was a gun in it, he admitted there was. *See id*. The office agents used his keys to open the vehicle and found a handgun. For this entire duration, the defendant "remained in handcuffs and was never given *Miranda* warnings." *Id*. Ultimately, the trial court denied his motion to suppress and a jury found him guilty of firearms and drug offenses. *See id*.

On appeal, the Pennsylvania Supreme Court considered whether "a parole agent must issue *Miranda* warnings to a parolee when he is in custody and questioned about *new crimes*." *Cooley*, 118 A.3d at 374 (emphasis added). The Court held in the affirmative. *See id*. at 379. While the focus of the Court's review was whether the defendant was in custody for *Miranda* purposes, the fact that the parole agents were questioning him about new crimes was critical.[8] The Court reasoned:

> [The defendant was] *accused of crimes for which he was not on parole*; there was no "interview" or dialogue related to the conditions of his parole or parole violations. . . .

---

[8] *See also Cooley*, 118 A.3d at 374 n.6 (acknowledging the defendant's contention that the question, of whether "*Miranda* warnings are required during custodial interrogation by a parole agent regarding *new crimes,*" was an issue of first impression) (emphasis added).

- 14 -

> After handcuffing, [the defendant] was searched; nothing was found. There is no evidence the agents felt threatened after that, but the restraints were not removed. No one told [the defendant] he was not under arrest or that he was restrained pursuant to routine policy. Instead, **the parole agents stated he was being investigated for new crimes**; **their interrogation and search was unquestionably aimed at crimes for which he was not on parole**. . . .

***Cooley***, 118 A.3d at 379 (emphases added). Based on the totality of the circumstances, the ***Cooley*** Court found that the defendant "was subject to custodial interrogation, and . . . the parole agents' failure to administer ***Miranda*** warnings violated [his] Fifth Amendment rights." ***Id***.

On appeal, Snyder maintains that individuals on parole retain their rights under ***Miranda***. He avers the facts in this case "are nearly identical to those in" ***Cooley***, which "warrant[s] suppression of all evidence." Snyder's Brief at 44. Snyder asserts that here, there was a custodial interrogation, as he "was detained, handcuffed, placed in an interview room, and questioned about a new crime — the Facebook video where he appeared to be in possession of a gun." Snyder's Brief at 43.

In its Rule 1925(a) opinion, the trial court acknowledged that it did not address the ***Miranda*** issue at the time of its suppression rulings. However, the court determined that Snyder's claim was meritless. It first reasoned that "***Miranda*** and the Self-Incrimination clause do not pertain to 'nontestimonial evidence [that was] obtained as a result of ***voluntary*** statements.'" Trial Court Opinion, 3/21/25, at 8 (emphasis added) (*quoting* ***U.S. v. Patane***, 542 U.S. 630 (2004)). The court then found that Snyder made his statements

- 15 -

voluntarily, given that he was [initially] reluctant to provide any information about the firearm for a considerable amount of time, [and despite] being questioned about it multiple times. [Snyder] refused to disclose any information to the officers from the time he was at the [parole] office and even into the officers' search of the Bentwood [R]esidence[. Snyder] then offered his confession once [PO] Swartz told [him] that the search would be quicker if [he] was cooperative.

*Id*. at 8-9.

After careful review of the record, we uphold the trial court's denial of relief, albeit on different grounds. *See Commonwealth v. Seeney*, 316 A.3d 645, 651 n.3 (Pa. Super. 2024) (stating we may affirm a suppression ruling on any basis). We reject Snyder's claim that the underlying facts are analogous to those in *Cooley*. Snyder ignores the salient fact in *Cooley* — that the interrogation of the defendant focused on new crimes. In contrast, here, all of PO Swartz's questioning pertained to suspected violations of Snyder's parole conditions. Accordingly, *Cooley* is distinguishable and does not govern this matter. As Snyder has failed to establish grounds for relief, we uphold the trial court's ruling.

For the foregoing reasons, we determine that none of Snyder's issues merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

- 16 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/24/2026