J-S43014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS GARVEY TRUST JR. | : | No. 840 MDA 2023 |

Appeal from the Order Entered May 25, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002265-2020

BEFORE: McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: MARCH 8, 2024**

The Commonwealth appeals from the order granting Marcus Garvey Trust Jr.'s motion to suppress. It maintains that the trial court erred by entertaining the motion because it was untimely and claims the court erred in granting the motion. We affirm.

The instant case stems from an alleged rape in September 2019. **See** Criminal Information, filed 11/3/20. The criminal complaint alleges that Trust sexually assaulted the victim on September 21, 2019, at approximately 9:44 p.m. That same night, at approximately 11:00 p.m., Corporal Matthew Johnston interviewed Trust at the Carlisle Regional Medical Center. **See** Criminal Complaint, at 7. Trust was receiving medical treatment after allegedly being assaulted by "an associate" of the victim. **Id.**

_____

[*] Retired Senior Judge assigned to the Superior Court.

The Commonwealth filed charges against Trust for the alleged sexual assault four months later. Trust moved for an extension of time to file an omnibus pretrial motion, alleging outstanding discovery "material to the defense's preparation of their pretrial motion." Motion to Extend Time to File Omnibus Pretrial Motion, filed 12/14/20, at 2, ¶ 10. The court granted the motion and gave Trust an extension of 30 days "**calculated from the date the discovery is complete**." **See** Order Extending Time to File Omnibus Pretrial Motion, filed 12/14/20 (emphasis added). The order also directed the District Attorney to "notify [Trust] in writing that discovery is complete." **Id.**

On the day of trial, Trust filed a Motion *in Limine* for Exclusion of Statement of Defendant. He sought the exclusion of his statements to Corporal Johnston, claiming that he was subjected to a custodial interrogation without being given **Miranda**[1] warnings. **See** Motion *in Limine* for Exclusion of Statement of Defendant, filed 5/8/23, at 3, ¶ 15. At a hearing on the motion, the Commonwealth stated, and the court confirmed, that the Commonwealth had objected off the record that the motion was untimely and that the court had overruled the objection.

Corporal Johnston testified that he arrived at the hospital, in plain clothes, to speak with Trust. N.T., Motion to Suppress Hearing, 5/24/23, at 23. When Corporal Johnston arrived, Trust was in a room in the emergency department. Trust's girlfriend and a member of the medical staff were in

---

[1] **Miranda v. Arizona**, 384 U.S. 436, 444 (1966).

Trust's room. *Id.* at 24. Trust's girlfriend had taken him to the hospital. *Id.* at 27. Corporal Johnston testified that he asked the medical staff if he could speak with Trust privately, and they allowed him to do so. *Id.* at 24. Trust's girlfriend also left the room at the corporal's request. *Id.* at 32. Trust was not receiving treatment immediately before the interview but was holding gauze to his face. *Id.* at 24, 32.

Corporal Johnston testified that during the interview, the door to the room was closed but not locked, two uniformed officers remained outside the room, Trust "was sitting upright in the gurney," and "was not handcuffed to the chair rail." *Id.* at 27, 31-32, 36, 37-38. Corporal Johnston conceded that he did not at any point during the interview inform Trust of his *Miranda* rights. *Id.* at 35.

The Commonwealth played, during Corporal Johnston's testimony, the recording of his questioning of Trust. *See id.* at 25-26. The recording reflects that Corporal Johnston informed Trust at the beginning of the interview that he was not there to ask about the assault on Trust but rather about "some things that happened with the female[.]" R.R. 186 (unpaginated).[2] Trust denied having attended a party or having "hook[ed] up" or having sexual relations that night. *Id.* at 187-88 (unpaginated). When medical personnel attempted to enter the room during the questioning, Corporal Johnston had them leave because they needed more time. Trust replied that he did not

---

[2] A transcript of the interview is in the reproduced record. The parties do not dispute its accuracy, and our review shows it to be materially accurate.

"need any more time" or "need to answer any more questions," and Corporal Johnston ended the interview. *Id.* at 189-90 (unpaginated).

One of the uniformed officers who remained outside of Trust's room during the interview, Trooper Corey James, testified that to get to the door to Trust's room, he had to go through a secured door that only medical personnel with a key could access. *Id.* at 11-12. Trooper James did not go into Trust's room and was not blocking the door to his room. *Id.* at 6, 8.

Trust testified in support of his motion. He said that during the interview, Corporal Johnston stood at the end of his hospital bed, and he did not feel like he could leave the room. *Id.* at 41. He did not indicate whether he knew or saw the two uniformed officers outside of his room. Trust admitted that he told Corporal Johnston he did not want to answer any more questions, stating it was because he saw the doctor who was ready to assist him. *Id.* at 43-44.

The court granted the motion to suppress. *Id.* at 48. This timely appeal followed.

The Commonwealth raises the following issues:

> I. Did the trial court err in hearing [Trust's] untimely pretrial motion to suppress evidence?
>
> II. Did the trial court err in suppressing evidence when it erroneously concluded that [Trust] was "in custody" at the time of questioning and therefore his constitutional rights were violated?

Commonwealth's Br. at 5 (suggested answers omitted).

The Commonwealth's first issue addresses whether the trial court erred in hearing Trust's motion to suppress. The Commonwealth likens this case to

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1246-48 (Pa.Super. 2011). The Commonwealth maintains that Trust, like Borovichka, filed an untimely motion to suppress and failed to give a reason for the untimely filing. The Commonwealth also maintains that Trust "was aware of the grounds for the motion" and "was clearly on notice about the content and circumstance of the interview" with Corporal Johnston. *Id.* at 21, 22.

The Commonwealth's claim is meritless. It acknowledges that the court granted Trust an extension but ignores the basis of that extension, *i.e.*, the completion of discovery. *Id.* 14 ("On December 14, 2020, [Trust] filed a motion to extend to time to file an omnibus pretrial motion, which was granted and the time to file was extended by 30 days"). Thus, it erroneously claims that Trust's motion was "877 days late." *Id.* at 21. This calculation assumes the deadline ran from the court's order granting the extension. However, the deadline ran from the completion of discovery. Therefore, we discern no error by the court.

Next, the Commonwealth alleges that the court erred in granting the motion to suppress. It maintains that the court incorrectly concluded that Trust was in custody at the time of his interview. It points to numerous factors that would suggest that Trust was not in custody at the time including the "short" duration of the interview, that Trust was not arrested before, during, or after the interview, that the interview occurred in Trust's hospital bed, and that Corporal Johnston obtained permission from hospital staff to speak with Trust. *See id.* at 31-32. It also notes that Trust agreed to be interviewed and

- 5 -

went to the hospital on his own accord to be treated for his injuries. ***See id.***

at 33. The Commonwealth further points out that Trooper James did not block

the door to Trust's room, that Corporal Johnston asked, "general questions,"

and that "no uniformed troopers were present" during the interview. ***Id.*** at

34, 35.

Our standard of review is settled for the grant of a motion to suppress:

> We consider only the evidence from the defendant's
> witnesses together with the evidence of the prosecution
> that, when read in the context of the entire record, remains
> uncontradicted. This Court must first determine whether the
> record supports the factual findings of the suppression court
> and then determine the reasonableness of the inferences
> and legal conclusions drawn from those findings. In appeals
> where there is no meaningful dispute of fact, . . . our duty
> is to determine whether the suppression court properly
> applied the law to the facts of the case.

***Commonwealth v. Arthur***, 62 A.3d 424, 427 (Pa.Super. 2013) (internal

quotation marks and citations omitted).

If a person is in custody or its functional equivalent, and is subject to

interrogation, police must give the familiar ***Miranda*** warnings. ***See***

***Commonwealth v. Gonzalez***, 979 A.2d 879, 887-88 (Pa.Super. 2009). A

person is in custody if they are "physically denied [their] freedom of action in

any significant way or . . . placed in a situation in which [they] reasonably

believe[] that [their] freedom of action or movement is restricted by the

interrogation." ***Commonwealth v. Cooley***, 118 A.3d 370, 376 (Pa. 2015)

(citation omitted). "The standard for determining whether an encounter is

custodial is an objective one, focusing on the totality of the circumstances with

due consideration given to the reasonable impression conveyed to the individual being questioned." *Id.* We consider such factors as: "the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions." *Commonwealth v. Cruz*, 71 A.3d 998, 1004 (Pa.Super. 2013) (citation omitted).

The trial court determined that Trust was in custody at the time of Corporal Johnston's questioning. *See* Rule 1925(a) Opinion, filed 7/5/23, at 4-5. That was a proper application of the law to the facts of this case. Certainly, Trust's freedom of action or movement was limited by the fact that he was in the emergency room to receive treatment for his injuries. However, that is not the issue. The question is whether he reasonably believed he could leave the interview. Under the entirety of the facts here, he did not. Corporal Johnston told Trust at the start of the interview that he was questioning him because he was a suspect in a sexual assault. Corporal Johnston had medical personnel and Trust's girlfriend leave the room, closed the door, and had a doctor that entered the room during the questioning, leave. Trust's room was accessible through a secured door that only hospital employees with a key could open, and two uniformed troopers were outside of Trust's room during the interview.

Trust's telling Corporal Johnston he did not want to answer more questions does not mandate a contrary outcome. He did so for the stated

reason that he wanted medical attention, and his desire not to answer questions does not demonstrate that he was not in custody. On balance, in view of the totality of the circumstances, Trust "reasonably believe[d] that his freedom of action or movement [was] restricted by the interrogation." *Cooley*, 118 A.3d at 376; *cf. Commonwealth v. Johnson*, 727 A.2d 1089, 1100-01 (Pa. 1999) (concluding appellant was not in custody during interview with detective at a hospital where another patient was in the room; the door to the room remained open; and appellant's restraints were "due to his physical condition"); *Commonwealth v. Ellis*, 700 A.2d 948, 955 (Pa.Super. 1997) (concluding appellant was not in custody during interview with detective at a hospital where detective obtained permission from medical staff to speak with appellant, appellant agreed to answer questions, appellant was not restrained, and interview occurred in hospital lounge).

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/8/2024