J-S45035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXA MCDEVITT | : | |
| | : | |
| Appellant | : | No. 678 MDA 2025 |

Appeal from the Judgment of Sentence Entered January 10, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001121-2021

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED: APRIL 24, 2026**

Appellant, Alexa McDevitt, appeals from the judgment of sentence imposed by the Court of Common Pleas of Lycoming County after a jury found her guilty of recklessly endangering another person (REAP) and propulsion of missiles into an occupied vehicle.[1] She challenges the pre-trial court's partial denial of her motion to suppress her statement to police, the pre-trial court's acceptance of the Commonwealth's objections to her questions posed to a police witness, and the sufficiency and weight of the evidence. Upon review, we affirm.

At around 7:00 a.m. on August 17, 2021, Gage Hoy, the Victim, was driving to work on interstate 180 in his red Chevy blazer in Montoursville,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S. §§ 2705 and 2707(a), respectively.

Pennsylvania. **See** N.T. Trial (Victim Testimony), 5/30/24, at 27-28. The Victim was in the right lane, driving on cruise control at about sixty-five miles per hour, playing music loudly, when he started to approach a white truck in his lane. **See id.** at 30. He put on his left turn signal and merged into the left lane. **See id.** at 31. However, he quickly noticed a silver Camry right up against his rear bumper. **See id.** at 33. Then, he saw in his rear-view mirror the Camry's driver-side window with a hand holding a black handgun, waving it around. **See id**. at 33, 46, 50. Suddenly, the Victim realized his Chevy's rear windshield was blown out. **See id.** at 33-34.

Sitting in disbelief, the Victim watched the Camry drive around his Chevy on the shoulder, and speed right into traffic, weaving in and out and going up the highway. **See** N.T. Trial (Victim Testimony), 5/30/24, at 34-35. The Victim followed and was able to take a photograph of the Camry, however it disappeared. **See id.** at 36-37. Then, the Victim pulled into a parking lot and called 911 dispatch to report the incident. **See id.** at 38. He gave a description of a white male with long black hair, maybe in his late twenties in a white car. **See id.** at 39-40.

Chief Jeffrey Gyurina, the police chief of the Montoursville Police Department, met the Victim in a nearby commercial parking lot. **See** N.T. Trial (Gyurina Testimony), 5/30/24, at 4. Chief Gyurina got out of his car and walked around Victim's Chevy to assess the damage. **See id.** at 5. After looking at the Victim's photograph of the Camry, Chief Gyurina confirmed with

the Victim that the Camry was grey, not white. *See id.* at 8-9. Then, Chief Gyurina informed his troopers to look for a grey Camry in the area. *See id.*

Troopers located the Camry near a local party supply store, and informed Chief Gyurina. *See* N.T. Trial (Gyurina Testimony), 5/30/24, at 13-14; N.T. Trial (Appellant Testimony), 5/30/24, at 60. The Camry's license plate number closely matched the license plate from the Victim's photograph. *See* N.T. Trial (Gyurina Testimony), 5/30/24, at 14-15. Chief Gyurina discovered the Camry was registered to Appellant's parents, and a police database linked her name to the Camry as well. *See id.* at 15. Then, Chief Gyurina obtained a photograph of Appellant and felt she matched the Victim's description except she was a female instead of a male. *See id.*

Afterwards, Chief Gyurina went inside the party supply store and learned that Appellant worked there, asking her employer if he could speak to her in a conference room. *See* N.T. Trial (Gyurina Testimony), 5/30/24, at 15-16. Appellant entered the conference room and Chief Gyurina introduced himself. *See id.* at 16; Commonwealth Trial Exhibit 6 (Appellant Body Camera Footage). In the conference room, Appellant answered a couple questions and responded to Chief Gyurina. *See* N.T. Trial (Gyurina Testimony), 5/30/24, at 16. At the end of the discussion, Appellant was placed into police custody. *See id.* at 17. On September 17, 2021, Appellant was charged with aggravated assault – attempts to cause or causes bodily injury with a deadly weapon, REAP, and propulsion of missiles into an occupied vehicle. *See* Bill of Information, 9/17/21; *see also* 18 Pa.C.S. §§ 2702(a)(4), 2705, 2707(a).

The record reflects that between August 30, 2021, and February 22, 2023, Appellant had several changes of counsel. On June 6, 2023, Appellant filed an omnibus pre-trial motion. *See* Omnibus Pre-Trial Motion, 6/6/23 (containing: (1) motion to compel discovery; (2) motion to suppress statements of Appellant; and (3) motion to suppress physical evidence). A conference was held on August 23, 2023, where defense counsel acknowledged that the omnibus pre-trial motion was filed beyond the deadline imposed by Pennsylvania Rule of Criminal Procedure 579.[2] The Commonwealth stated it suffered no prejudice by the delayed filing, and the pre-trial court scheduled a hearing on October 9, 2023. At the omnibus pre-trial motion hearing, the body-worn camera footage of Appellant at the party supply store was played and Chief Gyurina testified. *See* N.T. Omnibus Pre-Trial Motion Hearing, 10/9/23, at 6-38. Then, the pre-trial court partially

_____

[2] Rule 579. Time for Omnibus Pretrial Motion and Service

(A) Except as otherwise provided in these rules, the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown.

Pa.R.Crim.P. 579(A).

granted Appellant's suppression motion. **See** Pre-Trial Court Opinion, 2/28/24.[3]

On May 30, 2024, Appellant proceeded to a one-day jury trial. The Victim testified about the incident and that he had not previously known Appellant prior to the incident. **See** N.T. Trial (Victim Testimony), 5/30/24, at 27-41. Then, Chief Gyurina testified about his investigation and his body-worn camera footage was played from his interactions with both the Victim and Appellant. **See** N.T. Trial (Gyurina Testimony), 5/30/24, at 13, 16; Commonwealth Trial Exhibits 5 (Victim Body Camera Footage) & 6 (Appellant Body Camera Footage). Afterwards, Appellant testified about her version of the incident and admitted that she fired three gunshots at the Victim's vehicle. **See** N.T. Trial (Appellant Testimony), 5/30/24, at 59-99, **see id.** at 86. Appellant raised the issue of self-defense at trial. **See** N.T. Trial (Jury Instruction Meeting), 5/30/24, at 34.

Afterwards, the jury found Appellant guilty of REAP and propulsion of missiles into an occupied vehicle. **See** Verdict, 5/30/24. On January 10, 2025, the trial court sentenced Appellant to six to twenty-three months' imprisonment for REAP with eighteen months of probation supervision for propulsion of missiles into an occupied vehicle, running consecutively. **See** Sentencing Order, 1/10/25. On January 14, 2025, Appellant filed a post-

---

[3] Appellant on appeal only challenges the pre-trial court's decision partially granting her motion to suppress statements on video made to Chief Gyurina. **See** Appellant's Brief at 17-24.

sentence motion, and the trial court heard argument on the motion on February 25, 2025. *See* Post-Sentence Motion, 1/14/25. On April 21, 2025, the trial court denied the post-sentence motion. *See* Post-Sentence Motion Opinion, 4/21/25.

Appellant filed a timely notice of appeal on May 20, 2025, and the trial court ordered Appellant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). *See* Notice of Appeal, 5/20/25; Rule 1925(b) Order, 5/21/25. Additionally, Appellant requested an extension of time for filing a Rule 1925(b) statement, alleging she had not received the trial transcript, and the trial court thereafter granted her a twenty-one-day extension within which time Appellant complied. *See* Motion for Extension of Time to File Statement of Errors, 6/5/25; Order (Granting Rule 1925(b) Statement Extension), 6/6/25; 1925(b) Statement, 7/1/25. In the Rule 1925(a) opinion, the trial court judge additionally relied on the pre-trial order and opinion issued by a previous presiding judge in the case following the omnibus pre-trial motion hearing, as well as his own post-sentence order and opinion. *See* Trial Court Opinion, 7/8/25, at 15; *see also* Pre-Trial Court Opinion, 2/28/25; Post-Sentence Opinion, 4/21/25.

Appellant presents the following questions for our review:

   I.   Whether the [pre-]trial court erred in denying Appellant's motion to suppress her statement in full, where the undisputed evidence established that Appellant was subjected to custodial interrogation without first being advised of her ***Miranda*** rights[?]

II. Whether the [pre-]trial court abused its discretion in sustaining the Commonwealth's objections to defense counsel's questions regarding the investigating officer's belief that Appellant had committed a crime, where the officer's belief was directly relevant to determine whether Appellant was in custody for purposes of *Miranda*[?]

III. Whether the evidence was insufficient to sustain the convictions for [REAP] and propulsion of missiles into an occupied vehicle, where the Commonwealth failed to disprove Appellant's self-defense claim beyond a reasonable doubt[?]

IV. Whether the trial court abused its discretion in denying Appellant's post-sentence motion for a new trial, where the verdict was so contrary to the evidence as to shock the conscience[?]

Appellant's Brief at 5 (suggested answers and unnecessary capitalization omitted).

In her first issue, Appellant argues that the trial court erred in only partially denying her motion to suppress her police statement because her entire interrogation was custodial and conducted without *Miranda*[4] warnings. *See* Appellant's Brief at 17-21.

Our well-settled standard review of a denial of a motion to suppress is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as

_____

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Brinkley*, 331 A.3d 85, 90-91 (Pa. Super. 2025) (quoting *Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (cleaned up)).

Appellant argues that the workplace interrogation was custodial under Pennsylvania law because a reasonable person in her position would not have felt free to leave, and therefore *Miranda* warnings were required at the onset of Appellant arrival in the conference room. *See* Appellant's Brief at 17. Appellant contends that the video establishes she was in custody for the entirety of her interaction with Chief Gyurina. *See id.* at 18. She maintains the video's objective circumstances established she was in police custody from the outset: police arrived at her workplace, directed her employer to ask her to speak with the officer, and the officer isolated her in a windowless and cramped conference room. *See id.* at 18-19. Moreover, Chief Gyurina, in uniform, placed himself near the only exit and immediately began questioning her without advising her that she was free to leave or decline participation. *See id.* at 19.

Appellant also asserts that Pennsylvania case law involving workplace interrogations supports the finding of custody. *See* Appellant's Brief at 19-20. She analogizes the facts of this case to ***Commonwealth v. McCarthy***, 820 A.2d 757 (Pa. Super. 2003), where questioning in a closed office setting contributed to a finding of police custody, and ***Geary v. U.S. Steel Corp.***, 319 A.2d 174 (Pa. 1974), to emphasize the inherent power imbalance between employers and employees. *See* Appellant's Brief at 19-20. She additionally relies on federal authority, ***United States v. Mahar***, 801 F.2d 1477 (6th Cir. 1986), arguing that workplace questioning without advisement of rights or freedom supports a custodial determination. ***See id.*** at 20.[5]

Based on these circumstances, Appellant contends the pre-trial court's conclusion that she was "[n]ot in custody for the entirety of the interrogation should be reversed." Appellant's Brief at 20-21. She argues that the objective facts established custodial interrogation from the outset of Chief Gyurina questioning her at her place of employment, and the failure to administer ***Miranda*** warnings, at the start of that questioning, required suppression of her entire police statement. ***See id.*** at 21. Appellant requests reversal of the partial denial of suppression and a remand for a new trial without the admission of her police statement, asserting that the admission of the

_____

[5] Federal court decisions are not binding precedent on this Court; however, we may consider federal court decisions as persuasive authority. ***See Commonwealth v. Lang***, 275 A.3d 1072, 1083 (Pa. Super. 2022).

statement materially affected her trial strategy and her decision to testify. *See id.*

Our law is clear that when an individual is in custody and subject to interrogation, that individual is entitled to *Miranda* warnings. *Commonwealth v. Phillips*, 327 A.3d 1236, 1242 (Pa. Super. 2024) (citing *Commonwealth v. Yandamuri*, 159 A.3d 503, 520 (Pa. 2017)). "An individual is in custody if [she] is physically denied [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation." *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (citation and internal quotation marks omitted). The following standard applies:

> [t]he standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." "Interrogation" is police conduct "calculated to, expected to, or likely to evoke admission."

*Commonwealth v. Seeney*, 316 A.3d 645, 649 (Pa. Super. 2024) (citing *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999)).

The pre-trial court summarized the video played at the omnibus motion hearing as follows:

[Appellant] was at work when she was called to the conference room by [her employer's] personnel. Chief Gyurina, dressed in full uniform, identified himself immediately, and [Appellant] voluntarily entered the room and took a seat. [*See* Commonwealth Omnibus Pre-Trial Motion Hearing Exhibit 3 ("Body Camera Footage") at 4:09.] Chief Gyurina closed the door behind [Appellant] but did not lock it. Initially, Chief Gyurina and [Appellant] were the only two individuals in the room. Chief Gyurina first asked [Appellant] what time she arrived at work and next asked, "[d]id anything happen up on the highway?" [Appellant] appeared comfortable and did not hesitate to answer Chief Gyurina's questions. She instantly and matter-of-factly disclosed that she shot at a car that she described as attempting to run her off the road. [Appellant] stated she had a "dash cam" and "wasn't worried about this happening at all." When asked why she did not call the police after she shot at someone [Appellant] responded that she did not know she needed to.

A little less than one minute into the conversation, Chief Gyurina pauses for a moment[,] and [Appellant] looks toward the door/around the room and subsequently picks up her phone. [Body Camera Footage at 4:46]. After this, [Appellant] begins to look anxious but continued to answer questions from Chief Gyurina, the focus of which at this time appears to have shifted to confirming his suspicion that [Appellant] had no justification for shooting at the other car. [Appellant] appears distracted by something outside the closed door at 5:22 on the video, and at 6:38 on the video[,] a Pennsylvania State Trooper in full uniform enters the room, closes the door behind him, and positions himself between Chief Gyurina and the closed door and across from [Appellant]. While he does not block the door, he stands in close proximity to it.

The entire initial encounter, from the time [Appellant] entered the conference room until the time Chief Gyurina stepped out to contact the [Lycoming] District Attorney's office at 8:41 on the video, lasted approximately four and a half minutes. At no time during the initial part of the conversation with Chief Gyurina was [Appellant] placed into handcuffs, taken into custody, or told that she could not leave. [Appellant] had access to her cell phone the entire time she was speaking with Chief Gyurina and, in fact, felt free and comfortable enough to text with a third party during the latter portion of the conversation. Also of note, at no time during this encounter was [Appellant] read warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 11 -

Pre-Trial Court Opinion, 2/28/24, at 5-6 (brackets added).

The pre-trial court partially denied the suppression motion, explaining that Appellant's statements **after** the timestamp of 6:35 on the video would be suppressed due to the following:

> It is reasonable that Chief Gyurina, in the early stages of his investigation, needed to ask basic questions of [Appellant] to ascertain how, or even if, she was involved in the incident. As previously noted, he and [Appellant] were the only two individuals present in the room initially and their initial interaction appeared conversational in nature. [Appellant] immediately answered Chief Gyurina's question regarding whether anything happened on the highway that morning and volunteered that she shot at the car. When asked why she did not call the police after doing so, she stated that she did not know she needed to. [Appellant] made a statement that her actions were justified based on the other driver['s] actions. Chief Gyurina asked [Appellant] to explain the positioning of the cars during the incident. [Appellant] freely described what she recalled to have occurred. At that point, the [c]hief's suspicions regarding [Appellant's] involvement in the incident as the perpetrator of a crime were confirmed and the "investigation" progressed to an "interrogation" where [Appellant] was clearly the suspect. [Appellant's] completion of her explanation coincided with a Pennsylvania State Police Trooper entering the room at approximately 6:35 on the video.
>
> The [pre-trial court] finds that while the interactions of Chief Gyurina with [Appellant] did not initially rise to the level of a functional equivalent of a formal arrest, they escalated to that level after [Appellant] admitted her involvement in the incident and provided her initial explanation of how the vehicles were traveling up to the incident. At almost the same time [Appellant] completed this initial explanation, a uniformed [Pennsylvania State Police ("PSP")] Trooper entered the room and stood in close proximity to the door. At this point, the questioning was likely to elicit incriminating responses, thus satisfying the interrogation prong of the **Miranda** requirement. While [Appellant] continued to answer the questions, she was never informed that she was not required to, nor was she advised she was free to leave[,] and the positioning of the PSP Trooper would imply the contrary. This satisfied the "custodial" prong of the **Miranda** requirement, as

"[a] person is considered to be in custody for purposes of *Miranda* when the officer's show of authority leads the person to believe that [she] was not free to decline the officer's request, or otherwise terminate the encounter." *Commonwealth v. Harper*, 230 A.3d 1231[, 1237] (Pa. Super. 2020) [(citation omitted)]. As such, any of the statements [Appellant] made after the initial conversational exchange with Chief Gyurina were made during a custodial interrogation, prior to which she should have been advised of her right to remain silent and to the presence of an attorney [] as required by *Miranda*.

Pre-Trial Court Opinion, 2/28/24, at 8-9 (brackets added).

Appellant contends that the circumstances of her interaction with Chief Gyurina constituted custodial interrogation from the outset, thereby requiring the administration of *Miranda* warnings prior to any questioning. *See* Appellant's Brief at 17-21. As stated above, whether an individual is involved in custodial interrogation is an objective inquiry that considers the totality of the circumstances. *See Cooley*, 118 A.3d at 376.

Here, the pre-trial court thoroughly reviewed the video evidence and found that, during the initial stages of the interaction, Appellant was not subjected to restraints comparable to formal arrest. *See* Pre-Trial Court Opinion, 2/28/24, at 8-9. As the court explained, Appellant voluntarily accompanied Chief Gyurina to the conference room, was not physically restrained, was using her cellphone, and texted a third-party during the conversation. *See id.* Chief Gyurina initially sought basic information regarding the incident, and Appellant's responses were voluntary and unrestrained. *See* Pre-Trial Court Opinion, 2/28/24, at 8-9. It was *only* after Appellant made incriminating admissions – coinciding with the arrival of a trooper blocking her exit – that the interaction evolved into a custodial

contact. *See id.* After Appellant answered several questions, the focus of the investigation had clearly shifted, and an interrogation took place. *See id.* These factual findings which are supported by the record, weigh against a determination of custodial interrogation prior to that point in time. *See Seeney*, 316 A.3d at 649.

Furthermore, Appellant's argument on workplace dynamics and reliance on *Geary*, *McCarthy*, and *Mahar* is misplaced. *See* Appellant's Brief at 19-20. *Geary*, a civil case, does not address custodial interrogation or the application of *Miranda* warnings—and instead concerns wrongful discharge in the employment context—and therefore has no bearing on the issue presented. *See Geary*, 319 A.2d at 176. In *McCarthy* and *Mahar*, the courts found custodial interrogation existed when the defendants were subjected to police-dominated environments and questioning that had become overly accusatory, such that the defendant's freedom of movement was restrained to a degree associated with a formal arrest. *See McCarthy*, 820 A.2d at 760; *Mahar*, 801 F.2d at 1500. As discussed above *supra*, the pre-trial court found that Appellant's interaction with Chief Gyurina remained non-custodial during their initial interaction and became only custodial after her incriminating statements. *See* Pre-Trial Court Opinion, 2/28/24, at 8-9. Then, it became an interrogation once Chief Gyurina elicited incriminating statements and proceeded further, and once the other PSP officer positioned himself in close proximity to the exit. *See id.* at 9. Those supported findings are materially distinguishable from *Mahar* and *McCarthy*.

Instantly, the pre-trial court found based on the totality of the circumstances that Appellant voluntarily participated in what was initially an investigatory encounter. **See** Pre-Trial Court Opinion, 2/28/24. We agree and find no error in concluding that Appellant was not in custody during the initial phase of questioning in the party supply store conference room. **See** **Brinkley**, 331 A.3d at 90-91. Therefore, we find Appellant's first issue is meritless.

In her second issue, Appellant argues that the pre-trial court abused its discretion by preventing defense counsel from inquiring into whether Chief Gyurina considered Appellant a suspect. **See** Appellant's Brief at 21-24. Appellant claims that the pre-trial court wrongly prevented defense counsel from asking whether Chief Gyurina believed Appellant committed a crime on the allegedly improper basis that "only Appellant's subjective perception, not the officer's belief, was relevant to the custody analysis." **Id.** at 23 (citing Omnibus Pre-Trial Motion Hearing, 10/9/23, at 21, 30-33). Appellant relies on our Court's holding that "the fact that a defendant was the focus of the investigation is relevant for the determination of whether the defendant was in custody." Appellant's Brief at 23 (citing **Commonwealth v. Gonzales,** 979 A.2d 879, 888 (Pa. Super. 2009)). Here, Appellant alleges that, by preventing defense counsel from exploring whether Chief Gyurina viewed her as a suspect, the pre-trial court improperly excluded evidence that pointed to the objective circumstances of her police custody. **See id.** Moreover, Appellant asserts that the limited record confirmed that Chief Gyurina viewed Appellant

as a suspect at the start of the questioning. *See* Appellant's Brief at 24. Therefore, she reasons that, since "the [pre-]trial court misapplied the governing law and precluded relevant testimony bearing on [its] custody determination, its ruling constituted an abuse of discretion." *Id.* Accordingly, Appellant asks this Court to vacate the suppression order and remand for a new suppression hearing so that defense counsel can inquire about Chief Gyurina's "perceptions and intentions" during the initial questioning. *Id.* We disagree that any relief is due.

The standard of review of a trial court's admission of evidence is as follows:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but is rather the overriding or misapplication of law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record.

*Commonwealth v. Ganjeh*, 300 A.3d 1082, 1091 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted).

Upon review of the record, we find that the court did not err or abuse its discretion in excluding defense counsel's questioning at the omnibus pre-trial motion hearing. In fact, the hearing transcript that Appellant cites to concerns an objection to questions about what Chief Gyurina said about Appellant on his body camera to the Victim. *See* Omnibus Pre-Trial Motion Hearing, 10/9/23, at 31 (DEFENSE COUNSEL: "[W]hile you were speaking

with the [Victim] and the other officers [] looking for the alleged perpetrator, were you referring to the person that was involved other than the complaining witness as a dirtbag?"). Moreover, Appellant mischaracterizes **Gonzales**, because our Court in that case specifically stated that the test for custodial interrogation **does not** depend on the subjective intent of the law enforcement officer interrogator. **See Gonzales**, 979 A.2d at 888 (citing **Commonwealth v. Clayton Williams**, 650 A.2d 420, 427 (Pa. 1994)). Rather, the test focuses on whether the **individual** being interrogated reasonably believes her freedom of action is being restricted. **See Cooley**, 118 A.3d at 376. As explained above, we found that the pre-trial court did not err in its discretion by partially suppressing the body-worn camera footage of Appellant. **See supra** at 9-15. Accordingly, Appellant's second issue is meritless.

In her third issue, Appellant argues that the evidence was insufficient to support Appellant's convictions for REAP and propulsion of missiles into an occupied vehicle. **See** Appellant's Brief at 25-28. Appellant argues that the record did not support a finding that the Commonwealth met its burden of disproving self-defense beyond a reasonable doubt, which means the evidence was legally insufficient to sustain her convictions of REAP and propulsion of

missiles into an occupied vehicle. *See* Appellant's Brief at 26-28.[6] We

disagree.

> We begin by noting our standard of review for sufficiency of evidence:
>
> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (*en*

*banc*) (citation omitted).

As to Appellant's allegations of self-defense, the use of force against a

person is justified "when the actor believes that such force is immediately

necessary for the purpose of protecting [herself] against the use of unlawful

force" by the other person. 18 Pa.C.S. § 505(a). To justify the use of deadly

---

[6] Appellant does not challenge the sufficiency of evidence for her REAP or propulsion of missiles convictions.

force, the person must reasonably believe "that such force is necessary to protect [herself] against death, serious bodily injury, kidnapping[,] or sexual intercourse compelled by force or threat." 18 Pa.C.S. § 505(b)(2).

> In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements: (1) that the defendant did not reasonably believe it was necessary to kill in order to protect [herself] against death or serious bodily harm, or that the defendant used more force than was necessary to save [herself] from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety. *See* 18 Pa.C.S.[] § 505(b)(2). If the Commonwealth establishes any one of these three elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue.

*Commonwealth v. Kennedy*, 332 A.3d 133, 141 (Pa. Super. 2025) (citing *Commonwealth v. Burns*, 765 A.2d 1141, 1149 (Pa. Super. 2000) (some citations and brackets omitted)).

Appellant argues that her account of the incident at trial was consistent, credible, and allegedly corroborated by the Commonwealth's evidence. *See* Appellant's Brief at 26. She testified that she feared for her life and that the Victim was driving aggressively. *See id.* Moreover, the record showed that Appellant did not act with an intent to kill or injure the Victim, she just wanted to "merely frighten" and "compel him to stop his dangerous pursuit." *Id.* In fact, she alleges that even Chief Gyurina testified that he believed Appellant's intent was to scare the Victim rather than harm him, and that, moreover, the physical evidence was consistent with that. *See id.* at 26-27.

Furthermore, Appellant alleges that the Victim's testimony corroborates her version of events because: (1) he admitted he was aggressively driving an extremely loud car at the time of the incident; (2) he acknowledged "that his vehicle's position and movements could have caused Appellant to believe he was attempting to run her off the road"; and (3) he admitted "the firearm was not pointed directly at him, and that the bullet striking his car could have been unintentional." Appellant's Brief at 27. Appellant contends that "these concessions significantly undermine any claim that Appellant acted with malice or conscious disregard for human life rather than to legitimately defend herself." *Id.* Therefore, since the Commonwealth allegedly failed to meet its burden disproving self-defense, Appellant asserts the evidence was legally insufficient to sustain her convictions for REAP and propulsion of missiles into an occupied vehicle. *See id.* at 27-28. Accordingly, she asks this Court to vacate the judgment of sentence. *See id.* at 28. We find no relief is due.

We turn to the first element of the justification defense, whether the Commonwealth disproved that Appellant reasonably believed that she was in danger of death or serious bodily injury. This Court has set forth two elements which comprise a claim of reasonable belief as follows:

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that [s]he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that [s]he needed to defend [herself] with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citation omitted).

Viewed in the light most favorable to the Commonwealth, we find the Commonwealth introduced sufficient evidence for the jury to conclude that Appellant's alleged fear of death or serious bodily injury was not subjectively reasonable. Appellant testified that she was "afraid" of the Victim and was driving behind his Chevy. *See* N.T. Trial (Appellant Testimony), 5/30/24, at 63-64; *see also Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa. Super. 2021) ("The finder of fact is not required to believe the defendant's testimony that [she] thought that [she] was in imminent danger and acted in self-defense."). The trial court explained that Appellant "rather than slowing down to allow [the Victim] to outpace her, [] chose to use extraordinary means to try to get around him by passing him on the shoulder of the interstate highway." Trial Court Opinion, 7/8/25, at 11. Moreover, Appellant admitted that she did not call the police for safety or to report the confrontation but merely went to work afterwards. *See* N.T. Trial (Appellant Testimony), 5/30/24, at 75.

Also, the Victim testified that he did not see anything when he moved into the left lane to pass another vehicle and was surprised to see Appellant's vehicle "right up against [his] rear bumper." N.T. Trial (Victim Testimony), 5/30/24, at 33. The trial court indicated that the jury could have concluded from these facts that: (1) "that one who is afraid of another driver would not continually attempt to get around him, as that would seem more likely to

provoke instead of de-escalate a confrontation"; and (2) "[Appellant] rather than the Victim, was the aggressive driver." Trial Court Opinion, 7/8/25, at 11-12. We agree with the trial court and find that Appellant's fear of death or bodily injury was not subjectively reasonable, beyond a reasonable doubt. **See Smith**, 97 A.3d at 787.

Similarly, the Commonwealth introduced sufficient evidence for the jury to conclude that Appellant's alleged fear of death or serious bodily injury was not objectively reasonable. The trial court explained:

> For example, it is undisputed that [Appellant's] vehicle was behind the Victim's when the incident began. As indicated above, the jury could have concluded that a reasonable driver travelling behind what she believed was an aggressive driver would slow down to permit the other driver to outpace her instead of making repeated efforts to pass him, thereby emphasizing and remaining in proximity with a person whom she claims was attempting to injur[e] or kill her. Furthermore, if the jury believed the Victim's version of events, [Appellant] shot out his rear windscreen before she even attempted to pass him. According to the Victim, he was not even aware of [Appellant's] presence behind him in the left lane until he saw her right "against his [rear] bumper" immediately prior to the shot that broke his [rear windshield]. He further testified that he did not say or do anything to threaten [Appellant], but admitted that he may have inadvertently merged into her lane ahead of her. The jury could have concluded that a reasonable person would know when another driver had inadvertently cut in front of her and would not respond by escalating to use of a firearm against an inattentive driver.

Trial Court Opinion, 7/8/25, at 12-13 (citations and footnotes omitted).

Upon review of the record, we agree and find that Appellant's fear of death or bodily injury was not objectively reasonable beyond a reasonable doubt. **See Smith**, 97 A.3d at 787. Therefore, we find that the Commonwealth

presented sufficient evidence to disprove Appellant's self-defense claim.[7]
**Kennedy**, 332 A.3d at 141.

In issue four, Appellant argues the trial court abused its discretion in denying her post-sentence motion for a new trial because the verdict was against the weight of the evidence. **See** Appellant's Brief at 28-32. Our standard of review for a claim challenging the weight of the evidence is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Bright**, 234 A.3d 744, 749 (Pa. Super. 2020) (citing **Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. Super. 2013)).

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence to determine the credibility of the witnesses." **Commonwealth v. Cramer**, 195 A.3d 594, 600 (Pa.

---

[7] The fact that Appellant's car was behind the Victim's car and free to pull over to the side of the roadway or decelerate to create separation with the Victim's car would further support an alternative determination that Appellant was able to retreat before employing possibly lethal force, additionally disproving her self-defense theory.

Super. 2018) (citation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *See Commonwealth v. Spence*, 290 A.3d 301, 311 (Pa. Super. 2023) (citation omitted).

Specifically, Appellant contends that the jury improperly credited the Victim's testimony despite alleged inconsistencies, bias, and its self-serving nature, while failing to give adequate weight to Appellant's testimony and self-defense argument. *See* Appellant's Brief at 29-30. Next, Appellant argues that the record does not support the jury's conclusion that she acted with criminal intent for her propulsion of missile conviction. *See id.* at 30. In fact, "[t]he evidence was uncontradicted that Appellant intended only to fire warning shots in self-defense rather than to actually shoot into the complainant's vehicle as no one testified otherwise." *Id.* Moreover, Appellant claims that the Commonwealth failed to prove that she acted with the necessary *mens rea* and that she *intentionally* fired a missile into the Victim's Chevy as required by 18 Pa.C.S. § 2707. *See id.*[8]

_____

[8] Appellant's argument that the Commonwealth failed to establish the *mens reas* element of her propulsion of missiles conviction confuses sufficiency of evidence with the weight of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-53 (Pa. 2000) (explaining distinctions between claim challenging sufficiency of evidence and claim challenging weight of evidence). Appellant already conceded that the Commonwealth established her propulsion of missile conviction. *See* Appellant's Brief at 25-28. Therefore, we find this argument is meritless.

She also contends that this case is analogous to the facts of ***Commonwealth v. Anneski***, 525 A.2d 373 (Pa. Super. 1987), where our Court granted a new trial because the conviction was contrary to the weight of the evidence. ***See*** Appellant's Brief at 31. Appellant additionally asserts that there is "uncontroverted" evidence of her good character which further supports her request for a new trial. ***See*** Appellant's Brief at 32. Accordingly, Appellant argues she should be granted a new trial. ***See id.*** We disagree.

Appellant's argument that the jury improperly credited the testimony of the Victim over her testimony is unpersuasive, as we leave credibility determinations to the fact-finder. ***See Cramer***, 195 A.3d at 600. In its post-sentence opinion, the trial court concluded that the Commonwealth's witnesses were credible, and that the evidence presented by the Commonwealth was believed by the jury. ***See*** Post-Sentence Opinion, 4/21/25, at 6-7. Further, the trial court concluded that the jury was free to believe all, part, or none of the evidence and that the jury's belief in the Commonwealth's evidence did not shock the conscience. ***See id.*** After reviewing the record, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim and, accordingly, she is entitled to no relief. ***See Bright***, 234 A.3d at 749.

Finally, Appellant argues that ***Anneski*** applies to the facts of this case; however, it does not. ***See*** Appellant's Brief at 31. In ***Anneski***, the defendant thought her child was struck by her neighbor's car and engaged in an argument with that neighbor, threatening to "get a gun and use it." ***Anneski***,

525 A.2d at 376. This Court concluded that, while the evidence established an exchange of threats during an argument between the neighbors, the circumstances did not establish the defendant's settled purpose to terrorize her neighbor. *See id.* Therefore, the jury's finding that appellant was guilty of making terroristic threats was contrary to the weight of evidence. *See id.* Here, by contrast, Appellant was convicted of REAP and propulsion of missiles, entirely different offenses involving distinct statutory elements. *See* 18 Pa.C.S. § § 2705, 2707(a). Thus, *Anneski* is factually and legally distinguishable and we find it unpersuasive. Accordingly, we find Appellant's weight of the evidence issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/24/2026